# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza - 16th Floor, Brooklyn, NY, 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
Executive Director and
Attorney-in-Chief

Eastern District
Peter Kirchheimer
Attorney-in-Charge

May 16, 2017

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

**Re: United States v. Alejandro Luna (17-CR-120)**

Dear Judge Matsumoto,

I write in advance of sentencing, currently scheduled for June 2, 2017. On March 20, 2017, Mr. Luna pled guilty to the sole count of the indictment which charged him with illegal re-entry in violation of 8 U.S.C. §§ 1326(a). As Mr. Luna will express in his own words, he is deeply remorseful for his actions. For the reasons discussed in this letter we respectfully ask the Court to sentence Mr. Luna to a sentence of time-served.

## I.  BACKGROUND

\*\*\*

Before his arrest in this case, Alejandro Luna enjoyed a modest life with his partner in Bushwick, Brooklyn. He spent most of his time lifting heavy boxes in long shifts at a liquor store in Gramercy Park. It was arduous and grueling work but Alejandro had no complaints. Steady paying employment was difficult to come by for an undocumented immigrant in New York – especially one with a ten-year-old felony conviction. For two years his job allowed him to both rent a small but comfortable apartment and send $1,200 dollars a month to support his two young children in Mexico.

January 10, 2017 seemed like any other evening for Mr. Luna. He finished a long shift late into the evening and took the L train home to Bushwick. When he got off the train, he made his way home. After stopping in a bodega, he cut through his neighborhood playground to shorten his walk home. He had no idea that his quiet modest life was about to end.

As he walked through the park, he was stopped by two NYPD police officers. He was engaged in no criminal activity. He had no contraband. He was simply a man walking home from a long day at work in a lower income neighborhood. The police informed him that he was not permitted to be in the park after dark. He apologized. The police ran his information anyway and soon discovered a bureaucratic oversight that led him to be charged in this Court.

The police learned that Mr. Luna had an open warrant for a summons issued in 2002. The date of the warrant is significant. Mr. Luna had subsequently been arrested, convicted, and deported four years later. At the time of his arrest and conviction, that bench warrant should have been cleared but for some reason it remained in the database. This oversight had a critical impact in Mr. Luna's life: it meant that the police officers had to take Mr. Luna into custody on a violation for failing to obey a posted sign in a park. Once he entered the system, ICE Agents became alerted to his undocumented presence in the United States.

The violation was quickly resolved. As with most broken windows arrests, Mr. Luna accepted an ACD and was immediately released from jail.[1] It was a harrowing ordeal but Mr. Luna knew that it was an experience that thousands of poor New Yorkers endure every year. After being released, he finally made it home. He simply hoped to put the ordeal behind him and move on with his life.

\*\*\*

Two weeks after his arrest on January 25, 2017, Donald Trump issued an executive order entitled "Border Security and Immigration Enforcement Improvements."[2] While the media focused primarily on provisions in the Order directing funds to be made available to build a border wall between the United States and Mexico, the Order related to several other aspects of immigration as well.[3]

Specifically, section 6 of the Order directed that "[t]he Secretary shall immediately take all appropriate actions to ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law." Defendant's Exhibit A. Section 13 of the Order noted:

---

[1] See "Sanctuary Cities in Name Only" New York Times, Feb 15, 2017
https://www.nytimes.com/2017/02/15/opinion/sanctuary-cities-in-name-only.html?_r=0
[2] Available at https://www.whitehouse.gov/the-press-office/2017/01/25/executive-order-border-security-and-immigration-enforcement-improvements
[3] See "Trump Orders Mexican Border Wall to Be Built and Plans to Block Syrian Refugees" New York Times January 25, 2017 https://www.nytimes.com/2017/01/25/us/politics/refugees-immigrants-wall-trump.html?_r=0

> Priority Enforcement: The Attorney General Shall take all appropriate steps to establish prosecution guidelines and allocate appropriate resources to ensure that Federal prosecutors accord a high priority to prosecutions of offenses having a nexus to the southern border. Defendant's Exhibit A.

Though the Order did not explicitly direct ICE to execute an immigration surge, the Order made clear that detention of undocumented immigrants, especially from Mexico, was now a priority. The Order directed the Attorney General to focus specifically on cases "having a nexus to the southern border." If an undocumented immigrant from Mexico with a ten-year-old felony conviction and removal was not an enforcement priority before, it was clear after the Order that Alejandro Luna was now.

***

On February 9, 2017, Mr. Luna was resting at home with his partner when immigration agents arrived at his home unannounced and took him into custody without incident. Mr. Luna not was arrested in connection with a new arrest nor was he discovered by a sweep of records at Rikers Island. Unbeknownst to him, two days after Mr. Trump signed his Order, a complaint and arrest warrant was signed for his arrest in the Eastern District of New York. He appeared in Court the same day and has been held in custody without bond since.

## II.   APPLICABLE GUIDELINES[4]

We agree with the probation department that Mr. Luna's applicable guidelines are 15 to 21 months. This range is based upon a Criminal History Category of II and a total adjusted offense level of 13. However, these guidelines fail to account for the individual circumstances of this case as well as the numerous sympathetic §3553(a) factors in Mr. Luna's life. A sentence of time-served is sufficient but not greater than necessary to achieve the statutory goals of sentencing.

## III.   TIME-SERVED IS THE APPROPRIATE SENTENCE FOR MR. LUNA

Section 3553(a)(2)(A) directs the court to impose a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." By the date of sentencing, Mr. Luna will have served four months in custody. Given the individual circumstances in this case, a sentence of time-served is appropriate.

The individual circumstances of this case are uncommonly sympathetic: Mr. Luna's sole conviction was from over ten years ago when he was just twenty years old. After serving

---

[4] We have no factual objections to the information contained in the Presentence Report

two years in prison, Mr. Luna vowed never to return to a gang – or to any other criminal behavior. After being removed to Mexico he attempted to move past his mistakes. He had two children. He dedicated himself to his family. However, he soon realized that supporting two children in Mexico was increasingly difficult in a community with very few employment opportunities. The pressure to support his family strained his relationship with his girlfriend. It was anguishing for Mr. Luna to perpetually be worried about how he could provide meals for his children. The pressure to provide financial support for his children led to his regrettable decision to return to the United States.

Once Mr. Luna returned to the United States, he followed through on his vow never to return to a gang. Instead, he found full-time work and embraced his responsibility to be the sole provider of economic support for his two children. PSR ¶¶28, 29. No longer the impulsive angry twenty-year old who was convicted and removed in 2006, Alejandro Luna remade himself into a law abiding thirty-one year old who is both "a good person and a great father." PSR ¶29.

In considering an appropriate sentence, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A sentence of time-served is consistent with recent sentences in illegal re-entry cases that begin with no new criminal conduct and are accompanied by an old conviction. See United States v. Navarro, 16-CR-276 (FB) (time-served sentence in an illegal re-entry case after defendant was arrested for a traffic offense and a 2003 conviction for driving while intoxicated); United States v. Lee, 16-CR-217 (ILG)(time-served sentence in an illegal re-entry case where defendant was arrested due to an anonymous tip to the immigration hotline with a previous 2012 conviction for Conspiracy to Distribute Marijuana); United States v. Etayim, (BMC)(time-served sentence in an illegal re-entry case where defendant was arrested on an anonymous tip and had a 2012 conviction for Criminal Possession of a Controlled Substance in the Third Degree). Additionally a sentence of time-served is consistent with recent sentences imposed by this Court. See United States v. Calvo-Velasquez. 16-cr-211 (KAM) (time-served) and United States v. Adams, 16-CR-120 (KAM)(8 months incarceration); but see United States v. Tax-Velasquez, 16-CR-327 (KAM) (13-month sentence in a case where defendant had been previously convicted of a DUI, and subsequently sustained two additional DUI convictions after returning to the United States before being charged in the EDNY).

Alejandro Luna's individual circumstances are sympathetic. He returned to the United States only to provide financial support for his two young children. After his return, he dedicated himself to maintaining full-time employment and avoiding any additional criminal contacts. While Mr. Luna faces uncertain prospects for supporting his family when he returns to Mexico, he is looking forward to being reunited with his children again. He understands that he can never return to America. In this case, a sentence of time-served is sufficient but not greater than necessary to achieve the goals of sentencing.

4

## CONCLUSION

As Mr. Luna will express to the Court in his own words at sentencing, he is deeply remorseful for making the regrettable decision to return to the United States. We ask the Court to consider the mitigating circumstances in his life that led him to make this decision. Respectfully, we submit that the appropriate sentence in this case is time-served.

Thank you for your consideration,

/S/Len H. Kamdang
Len H. Kamdang
Counsel to Alejandro Luna
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Fl.
Brooklyn, NY 11201
(718) 407-7414

Copies to:

Chambers of the Kiyo A. Matsumoto, United States District Court Judge (via hand delivery)

Temidayo Aganga-Williams, Assistant United States Attorney (via first class mail)

Mr. Alejandro Luna (89942-053) – Metropolitan Detention Center (via legal mail)

Jennifer Baumann, United States Probation Department (via hand delivery)